UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH SANTIAGO,

                                    Petitioner,

                                                            Case No. 19-CV-6529-FPG

v.


SUPERINTENDENT MICHAEL SHEAHAN,                    DECISION AND ORDER

                                    Respondent.

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, *pro se* Petitioner Joseph Santiago brings this habeas petition to challenge his state-court convictions for murder in the second degree and criminal possession of a weapon in the second degree. ECF Nos. 1, 2. Respondent Superintendent Michael Sheahan opposes the petition. ECF No. 13, 14. For the reasons that follow, Petitioner's request for habeas relief is DENIED, and the petition is DISMISSED.

## BACKGROUND

In December 2012, Petitioner was indicted on charges of (1) second degree murder under New York Penal Law § 125.25(1); (2) second-degree criminal possession of a weapon (intent to use unlawfully) under N.Y. Penal Law § 265.03(1)(b); and (3) second-degree criminal possession of a weapon (possession of loaded firearm) under N.Y. Penal Law § 265.03(3). ECF No. 13-2 at 9-10. The charges arose out of the shooting death of Migel DeJesus on June 7, 2012. Petitioner's case proceeded to trial, which began in August 2013. ECF No. 13-3 at 204.

The prosecution's theory was that, on the evening of June 7, Petitioner confronted DeJesus at the corner of Wilkins Street and Joseph Avenue in Rochester and shot him four times with a .38 caliber revolver. *Id.* at 602. Petitioner fled to a nearby backyard, dropping the revolver as he ran,

and hid.  Shortly thereafter, responding police officers discovered Petitioner in the backyard and took him into custody.  The prosecution's case was largely circumstantial—no witness testified to having seen Petitioner shoot DeJesus, but eyewitnesses observed a person matching Petitioner's description come to the area with a firearm before the shooting and flee from the area after the shooting.  The most direct evidence came from Carmen Cruz, a nearby resident.  After she heard gunshots, she exited her house and found DeJesus attempting to walk on the adjacent sidewalk.  ECF No. 13-3 at 661.  DeJesus collapsed, and Cruz held him while they waited for an ambulance.  *Id.* at 662.  Cruz asked DeJesus who shot him, and he responded that "Josh" shot him.  *Id.* at 663. "Josh" is Petitioner's nickname.  *Id.* at 664.

Primarily, the defense presented the theory that Petitioner was simply an innocent bystander who happened to be in the area.  *Id.* at 610.  In addition, although they did not overtly pursue a justification defense at trial, the defense marshalled several pieces of evidence to suggest that there had been a shootout between Petitioner and DeJesus and that Petitioner had shot DeJesus in self-defense.  *Id.* at 1356.  For example, the defense noted that there were more projectile remnants found at the scene beyond those that could have been fired from a five-shot revolver. *See id.* at 1133-35.  The defense also suggested that someone had retrieved a gun from DeJesus after he had been shot.  *Id.* at 1330-31.

The jury found Petitioner guilty on all three counts.  *Id.* at 1440.  Petitioner was sentenced to an indeterminate sentence of twenty-one years to life on the murder conviction, and determinate fifteen-year sentences on the second and third counts.  *Id.* at 1461-63.

Petitioner filed a direct appeal to the Appellate Division, Fourth Department, which affirmed the convictions.  *See People v. Santiago*, 156 A.D.3d 1386 (N.Y. App. Div. 2017).  On

April 20, 2018, the New York Court of Appeals denied Petitioner's application for leave to appeal. ECF No. 13-2 at 424.  Petitioner filed this action in July 2019.  ECF No. 1.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where the petitioner raises a claim that was adjudicated in state-court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality."  *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted).  "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts."  *Id.* (internal quotation marks omitted).  "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* (internal quotation marks and ellipses omitted).  In analyzing a habeas claim, "[f]ederal habeas courts must presume that the

state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Petitioner contests his conviction on four grounds.  First, he contends that the trial court erroneously allowed the prosecution to elicit identification testimony from a witness who was not properly noticed under New York Criminal Procedure Law § 710.30.  Second, the trial court erroneously admitted the hearsay evidence in which DeJesus identified Petitioner as the shooter. Third, the trial court wrongly excluded hearsay statements from medical records  in which DeJesus claimed he did not know who the shooter was.  ECF No. 2 at 2.  Fourth, he argues that the prosecution unlawfully withheld *Brady* material related to DeJesus's possession of a firearm on the night of the shooting.

### I.   Violations of State Law

Petitioner's first three claims may be rejected on the same grounds.

All three claims raise issues of state law: Petitioner argues that the trial court violated a state discovery rule (CPL § 710.30) and wrongly applied state evidentiary rules (hearsay and its exceptions).  Generally, habeas review does not extend to such matters.

"According to § 2254, a federal habeas court may only consider a petition if it claims 'a violation of the Constitution or laws or treaties of the United States.'" *Chellel v. Miller*, No. CV-04-1285, 2008 WL 3930556, at *5 (E.D.N.Y. Aug. 21, 2008) (quoting 28 U.S.C. § 2254(a)). In other words, "federal habeas corpus relief does not lie for errors of state law, absent a corresponding violation of federal constitutional rights." *Cunningham v. Conway*, 717 F. Supp. 2d 339, 367-68 (W.D.N.Y. 2010) (internal quotation marks omitted). Consequently, federal courts have routinely rejected claims for habeas relief premised purely on a violation of § 710.30, *see, e.g.*, *id.* at 368; *McCullough v. Filion*, 378 F. Supp. 2d 241, 261 (W.D.N.Y. 2005) (collecting cases), or the erroneous application of state hearsay rules. *Boddie v. Edwards*, No. 97 Civ. 7821, 2005 WL 914381, at *5 (S.D.N.Y. Apr. 20, 2005); *Santana v. Lee*, No. 11-CV-105, 2015 WL 4207230, at *22 (N.D.N.Y. July 2, 2015). These three claims fail to the extent they raise errors of state law.

Arguably, Petitioner does attempt to frame these alleged errors in constitutional terms—for example, he asserts that the § 710.30 violation contravened his "right to due process" and that the admission of DeJesus's statement "violated [his] right to confrontation under the 6th Amendment." ECF No. 2 at 5, 8. But even if the Court were to construe his arguments that broadly, Petitioner would still not be entitled to relief, as he did not exhaust his state remedies with respect to these constitutional claims.

Under § 2254(b)(1)(A), a federal court may not grant a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." In order to "satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (internal quotation marks, brackets, and

citations omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." (internal brackets and quotation marks omitted)).  Moreover, "[i]f a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred," the habeas court "must deem the claim procedurally defaulted."  *Id.* (internal brackets omitted).  This means that the dismissal of an unexhausted claim is treated as a "disposition of the habeas claim on the merits."  *Id.*

Here, Petitioner never raised the constitutional aspects of his claims during his direct appeal; he framed his arguments only in terms of state law.  *See* ECF No. 13-2 at 319-70 (brief before Appellate Division); *id.* at 395-410 (reply brief before Appellate Division).[1]  Having failed to do so, Petitioner did not exhaust his state remedies, and these claims are procedurally defaulted. *See Sepulveda v. New York*, No. 08-CV-5284, 2013 WL 1248379, at *2 (S.D.N.Y. Mar. 26, 2013) (rejecting similar claim on exhaustion grounds where petitioner "did not present the *constitutional variations* of his § 710.30 arguments on direct appeal"); *id.* (noting that, under New York law, a claim is barred from further state-court review if it could have been, but was not, raised on direct appeal).

Accordingly, Petitioner is not entitled to relief on any of the first three claims.

## II. *Brady* Claim

Petitioner also argues that he was wrongly denied *Brady* material during his criminal proceedings.  Petitioner exhausted this claim during his direct appeal, and so it is properly before

---

[1] Indeed, he did not even raise these issues in his letter requesting leave to appeal to the Court of Appeals.  *See* ECF No. 13-2 at 415-21.

this Court.  However, on the merits, the Court concludes that the adjudication of his *Brady* claim in the state-court proceedings did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  Therefore, Petitioner is not entitled to relief.

Some background may be helpful.  Recall that, although the defense primarily argued at trial that Petitioner was an innocent bystander to the shooting, they also alluded to a justification defense.  Some of the evidence supporting this theory was admitted at trial: defense counsel elicited testimony from a police evidence technician that seven bullet fragments—more than the five-shot revolver could hold—were found in the vicinity of the shooting.  *See* ECF No. 1-1 at 15-16 (citing record evidence).

Other evidence supporting this theory was not admitted at trial but is in the record.  There was a certified report from the City of Rochester's ShotSpotter system[2] that indicated that eight shots had been fired in the vicinity of the shooting.  ECF No. 13-2 at 182-92.  The defense did not attempt to move this report into evidence.  *See* ECF No. 13-3 at 1256-57.  There was also a witness who told police that, immediately after the shooting, she observed a woman pick up an "unknown object" near DeJesus and walk into a nearby house.  ECF No. 13-2 at 174.  The defense theorizes that the object was a gun and that the woman was Cruz's daughter.  *See id.* at 345.  The defense did not call this witness at trial.  ECF No. 13-3 at 1455.  Finally, there was a police report summarizing statements from a confidential informant:

> THE CONFIDENTIAL INFORMANT WHO WAS NOT ON WILKINS STREET DURING THE SHOOTING, BUT TOLD US HE/SHE HEARD [DEJESUS] AND JOSH HAD AN OLD BEEF AND THAT EVENING JOSH HAD SOME BLACK KID TAKE [DEJESUS'S] BIKE AND HIDE IT BEHIND A BLUE VAN PARKED ON WILKINS STREET.  CI STATED [DEJESUS] FOUND THE BIKE AND EXCHANGED WORDS WITH JOSH AND CALLED HIM OUT.  JOSH

---

[2] ShotSpotter is a system of microphones that records and locates gunshots within Rochester.  ECF No. 13-2 at 184.

> THEN AT SOME POINT CONFRONTED [DEJESUS] WITH OTHERS WHILE
> STANDING NEXT TO THE BLUE VAN HE SHOT AT [DEJESUS], CAUSING
> [DEJESUS] TO PULL OUT A HANDGUN AND SHOOTING BACK AT JOSH.
> JOSH THEN RAN DOWN WILKINS STREET . . . . THE CONFIDENTIAL
> INFORMANT ALSO STATED [CRUZ] WAS HOLDING [DEJESUS] BEFORE
> THE AMBULANCE ARRIVED AND WAS TOLD BY [DEJESUS] JOSH HAD
> SHOT HIM.   THE CONFIDENTIAL INFORMANT ALSO TOLD US[] THE
> DAUGHTER OF [CRUZ] . . . WAS ALSO PRESENT.

ECF No. 13-2 at 175.  Based on other portions of the police report, it also appears the Confidential

Informant told police that Cruz's daughter had removed a gun from DeJesus's body after he had

been shot.  *Id.* at 176; *see also* ECF No. 1-1 at 5-6.

During pretrial proceedings, the defense requested disclosure of the informant's identity,

ECF No. 13-2 at 79, but the trial court concluded that the prosecution had complied with its *Brady*

obligations.  ECF No. 13-3 at 38, 187.  Ultimately, the defense did not present a full-fledged

justification defense at trial.

On direct appeal, Petitioner asserted that the prosecution had wrongfully withheld the

informant's identity, in violation of *Brady*.  ECF No. 13-2 at 325, 358-62.  He contended that this

evidence was favorable for two reasons—first, it would support a possible justification defense

and undermine the prosecution's theory that this was an "execution"-style ambush; and second, it

would undermine Cruz's credibility, insofar as Cruz had claimed that no one had removed an

object from DeJesus after he was shot and that her daughter was not near the scene at the time of

the shooting.  *See id.* at 360.

The Appellate Division rejected this argument and affirmed the conviction.  *See Santiago*,

156 A.D.3d at 1387-88.  It concluded that that, because "the confidential informant's hearsay

information made it appear as if the victim acted in self-defense . . . there is no reasonable

probability that, had it been disclosed to the defense, the result would have been different—i.e., a

probability sufficient to undermine this Court's confidence in the outcome of the trial." *Id.* at 1388 (internal brackets and quotation marks omitted).

The Court's task is to review the reasonableness of the Appellate Division's conclusion on the *Brady* issue. *See Baker v. Lempke*, No. 07-CV-1179, 2010 WL 1730034, at *3 (N.D.N.Y. Apr. 26, 2010) (stating that a habeas court reviews the "last reasoned decision" of the state courts).

"Well-established Supreme Court precedent holds that the prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence.  This duty exists whether or not the defense requests exculpatory evidence." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (citations omitted).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Boyette v. Lefevre*, 246 F.3d 76, 89 (2d Cir. 2001). Because the Appellate Division focused on the latter element, the Court limits its analysis accordingly.

A *Brady* violation occurs only if the undisclosed, exculpatory evidence is material, *i.e.*, "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 91.  "Several well-established propositions guide a materiality analysis." *Id.*  "First, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* "Instead, the court must determine whether, in the absence of the undisclosed evidence, the accused received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 92 (internal quotation marks omitted).  "Second, the defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed

evidence, there would not have been enough left to convict." *Id.* (internal quotation marks omitted). Third, "once a reviewing court . . . has found constitutional error, there is no need for further harmless-error review." *Id.* "Fourth, the reviewing court must consider the suppressed evidence collectively, not item by item." *Id.* (internal quotation marks omitted).

Petitioner argues that the informant's statements "completely undermined the prosecution's theory" that this was an "execution"-style ambush and, if disclosed, could have allowed him to pursue a justification defense at trial. ECF No. 1-1 at 26-27, 29. While the Court agrees that DeJesus's possession of a firearm might have opened up the possibility of a justification defense, the suppressed evidence would have almost entirely served to inculpate Petitioner. *See United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005) (stating that materiality "turns on the cumulative effect of all such evidence suppressed by the government" (internal quotation marks omitted)).

Under New York law, a justification defense has two components: "[t]he fact-finder must determine that the defendant believed deadly physical force was necessary and that a reasonable person would have believed the use of deadly physical force was necessary under the same circumstances." *Jackson v. Edwards*, 404 F.3d 612, 623 (2d Cir. 2005). In addition, the defense is unavailable if a defendant confronted with deadly force "knows he can retreat with complete safety but fails to do so." *Id.* To pursue this defense, Petitioner would need to concede some of the key disputes at trial—that he possessed a loaded firearm, and that he shot and thereby used deadly force against DeJesus.

Moreover, it would not be enough to show that DeJesus had a gun; there would need to be evidence that Petitioner reasonably believed DeJesus "[was] using or [was] about to use deadly physical force." N.Y. Penal Law § 35.15(2)(a). Petitioner identifies no evidence—whether from

trial, the suppressed *Brady* materials, or his habeas submissions—that indicates that DeJesus was, or he believed DeJesus was, about to use deadly force against him.  To the contrary, the suppressed evidence supports the prosecution's argument that Petitioner ambushed DeJesus.  The informant's statement indicates that Petitioner "had an old beef" with DeJesus and therefore had a motive to attack him.  ECF No. 13-2 at 175.  Shortly before the shooting, Petitioner created a ruse so as to confront DeJesus: he had someone else steal DeJesus's bicycle.  *Id.*  During the confrontation, Petitioner brandished a firearm and shot DeJesus, and DeJesus only shot a firearm in response.  *Id.*

Accordingly, even if the facts to which the informant testified could be admissible at trial, the Court agrees with the Appellate Division that they do not undermine confidence in the outcome.  There is no evidence that DeJesus was using or was about to use deadly force against Petitioner, and therefore it is not "reasonably likely" that a justification defense would have prevailed.[3]  *Kroemer v. Tantillo*, 758 F. App'x 84, 86 (2d Cir. 2018) (summary order) (rejecting claim that suppressed materials would have allowed defendant to prevail on a defense that he had not raised at trial).

Aside from the proposed justification defense, Petitioner argues that the suppressed evidence is material because it undermines Cruz's credibility.  ECF No. 1-1 at 27.  Specifically, it contradicts Cruz's testimony that "no one removed an object from DeJesus" and that her daughter "was not even present on Wilkins Street until <u>after</u> the police and later an ambulance arrived on the scene."  ECF No. 1-1 at 27.

---

[3] For example, Petitioner asserts that "testimony about removal of the gun could have eliminated a strategic constraint and allowed the defense to present its own evidence of justification, evidence that might have been too risky without a record-based explanation for why no second gun was found at the scene."  ECF No. 1-1 at 29.  But Petitioner does not actually identify or describe what this justification evidence would be.

In the first place, while the suppressed evidence may contradict some of Cruz's statements, it also corroborates her key claim: that DeJesus told her that Petitioner shot him. *See* ECF No. 13-2 at 175. Regardless, in light of the trial record, the Court cannot find the suppression of this impeachment evidence prejudicial. "Where the evidence against the defendant is ample or overwhelming, the withheld *Brady* material is less likely to be material than if the evidence of guilt is thin." *United States v. Gil*, 297 F.3d 93, 103 (2d Cir. 2002). Admittedly, Cruz provided the only direct link between Petitioner and the shooting, but the circumstantial evidence strongly connected Petitioner to DeJesus's death. As the Appellate Division summarized, several "witnesses provided nearly identical descriptions of the perpetrator and his clothing, and [Petitioner] was apprehended a short distance away, very close to the murder weapon, and inside a locked yard into which the witnesses said the perpetrator had fled. Furthermore, he was wearing pants that matched the description that the witnesses gave of the perpetrator's pants, and he was holding a hat and had a T-shirt at his feet, both of which matched the witnesses' description of those parts of the perpetrator's clothing." *Santiago*, 156 A.D.3d at 1387. Petitioner's theory that he was an innocent bystander and that an unobserved, unidentified assailant shot DeJesus simply does not square with the largely consistent witness accounts and the physical evidence that was found where he was hiding from police. Thus, even if the jury were to discount Cruz's claim that DeJesus identified Petitioner as the shooter, it would not undercut the ample circumstantial evidence or put the case in "such a different light as to undermine confidence in the verdict." *United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998).

For these reasons, the Appellate Division's resolution of the *Brady* claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Petitioner is therefore not entitled to relief on this ground.

**CONCLUSION**

Petitioner's request for habeas relief is DENIED and his petition (ECF Nos. 1, 2) is DISMISSED.   Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.   The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: April 22, 2020
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court